1

2

3

4

5

6

7

8            IN THE UNITED STATES DISTRICT COURT

9          FOR THE EASTERN DISTRICT OF CALIFORNIA

10   GALINA BOTSYURA,

11            Plaintiff,                    CIV S-07-0640 GGH

12        vs.

13
     MICHAEL J. ASTRUE,                     ORDER
14   Commissioner of Social Security,

15            Defendant.
     _____/
16

17   _Introduction and Summary_

18            Plaintiff, an SSI applicant, has already been awarded benefits on a separate

19   application, dated September 24, 2002, due to a back condition.  She seeks in this action to

20   acquire a ruling finding her disabled prior to that date, beginning with the filing date of the

21   instant application in November 2000.

22            Plaintiff's main claim centers about the condition of her back which is

23   indisputably disabling at this time.  She asserts that the ALJ lacked substantial evidence in

24   picking the February 2002 onset date for her disabling back problems after the Appeals Council

25   had initially sent the matter back to the ALJ for resolution of the correct onset date.  Also raised

26   are secondary claims:

                                        1

1.  Various physical and mental ailments, other than her back condition, should have been viewed as "severe impairments;"

2.  Plaintiff's back condition should have been rated at listing severity;

3.  The ALJs credibility analysis was wanting;

4.  The ALJ's residual functional capacity findings lacked substantial evidence.

For the most part, plaintiff has failed in his recitation of secondary claims to relate them to the fact that plaintiff has already been awarded disability, Supplemental Security Income benefits.  For example, the issue of the listing severity of plaintiff's back condition, or plaintiff's symptom credibility, or the residual capacity finding prior to the time of disability will be analyzed, if necessary, in terms of ascertaining the appropriate onset date of the disabling back condition.  The court will not undertake an abstract discussion of these issues. In other words, to the extent that plaintiff's condition would equal a listing after February 2002, the point is irrelevant.  Further, if plaintiff would be disabled with a sedentary residual functional capacity prior to February 2002, the listing issue is again irrelevant.  The benefits awarded do not depend on the severity of the condition past 'disabled," i.e., there is no special bonus for being  "very disabled."  The only claim that potentially merits separate analysis is the unrelated-to-the-back condition claims of other severe impairments, but again, this asserted error must relate to a time period prior to February 2002.

For the reasons set forth herein, the court finds that the ALJ lacked substantial evidence in the record in choosing the February 2002 date, in that the record, especially the treating physician record and objective tests, convincingly demonstrates that the onset of disability occurred no later than February 2001.  There is insufficient evidence for any asserted impairment to set the date any earlier.

*The ALJ Findings*

The ALJ found in his decision on remand (quoted verbatim except for bracketed material):

1.  The claimant has not engaged in substantial gainful activity since November 21, 2000 [her approximate date of entry to the United States].

2.  The medical evidence establishes that the claimant has severe degenerative disc disease of the lumbar spine, but that she does not have an impairment or combination of impairments [which meet a listing criteria].

3.  The claimant's testimony and subjective complaints are not fully credible for the period prior to February 19, 2002, for the reasons set forth in the decision.

4.  Prior to February 19, 2002, the claimant had the residual functional capacity to perform the physical exertion requirements of work except for lifting more than 50 pounds occasionally or 25 pounds frequently.  As of February 19, 2002, the claimant could perform all requirements for work except for lifting more than 10 pounds and standing or walking more than occasionally....

5.  Prior to February 19, 2002, the claimant was not disabled because she was not precluded from performing her past relevant work as kitchen worker, janitor, or car washer.  As of February 19, 2002, the claimant was unable to perform any of her past relevant work.

6.  As of February 19, 2002, the claimant had the residual functional capacity to perform no more than sedentary work....

7.  The claimant was 50 years old [as of March 3, 2001], which is defined as approaching advanced age....

8.  The claimant is unable to communicate in English.

9.  The claimant does not have any acquired work skills which are transferable to the skilled or semi-skilled work activities of other work....

10. [The Grids] direct that, considering the claimant's residual functional capacity, age, education, and work experience, she be found "disabled" commencing February 19, 2002.

12. [sic] [essentially a repetition of finding 10].

\\\\\

\\\\\

3

1  *Discussion*

2      A. Whether Substantial Evidence Supported the Date of Disability Onset As Chosen By

3         the ALJ

4          While at times a person's onset date is readily evident because of the happening of

5  a major trauma, in most cases, choosing the onset date is an educated guess based on piecing

6  together, and drawing inferences from, various medical records and testimony.  The latter is true

7  in this case.

8          The Commissioner's decision must be affirmed by us if supported by substantial
           evidence, and if the Commissioner applied the correct legal standards. Id. Under
9          this standard, the Commissioner's findings are upheld if supported by inferences
           reasonably drawn from the record, see Gallant v. Heckler, 753 F.2d 1450, 1452-53
10         (9th Cir.1984), and if evidence exists to support more than one rational
           interpretation, we must defer to the Commissioner's decision, see Morgan v.
11         Commissioner, 169 F.3d 595, 599 (9th Cir.1999).

12  Batson v. Comm. of SSA, 359 F.3d 1190, 1193 (9th Cir. 2004).

13  In analyzing the record for substantial evidence, it is important to observe that few medical

14  records as a whole point unerringly to one result.  However, it is not appropriate simply to pick

15  isolated evidence which supports a conclusion while ignoring the qualitative and quantitative

16  evidence to the contrary.

17          Perhaps suspicious that this plaintiff had arrived in America only to

18  inappropriately seek immediate SSI disability benefits (she did apply almost as soon as she did

19  arrive), the ALJ did not rely on the different treating sources which showed a continuous

20  complaining of, and treatment for, back pain with radiculopathy since at least February 2001.

21  The question is did something happen in February 2002 (the ALJ's chosen date) which caused a

22  worsening of a previously manageable back problem, or is the differently dated objective testing

23  in the record prior and subsequent to February 2002 simply indicative of a condition she had

24  prior to the ALJ's adjudicated onset date.

25          First of all, nothing in the record pinpoints February 2002 as a watershed month

26  vis-a-vis the back problem.  That is, there was no slip and fall, no car accident, no lifting

accident.  Rather, as far back as February 2001, plaintiff was seeing treating sources for lumbar

area spine pain with radiculopathy into the right leg.  Tr. 176.  See also Tr.172, 175, 173, 174

(from the Harbor Medical Clinic and a Doctor Rafaov wherein lumbar spasms were diagnosed);

Tr. 192, 193, 195 (from the Midtown Medical Clinic).  Significantly, in February *2001*, an

abnormal nerve conduction study demonstrated evidence of lumbrosacral radiculopathy.  Tr. 177.

In September 2001, an X-ray report showed significant scoliosis and lumbar narrowing of

intervertebral space.  Tr. 230.  The record also indicates the prescription of many medications

prior to February 2002 used in an attempt to mitigate the back problems.  See e.g., Tr. 174 (April

2001), Tr. 175 (March 2001), Tr. 176 (Feb. 2001), Tr. 203 (Feb. 2001), Tr. 208, Jan 2001), Tr.

248 (April 2001).

All of this pre-2002 medical information was very consistent with the assertion of

serious back pain problems which would have been disabling under the residual functional

capacity analysis performed by the ALJ for February 2002.  Thus, it was not novel at all that an

examination in February 2002 also revealed what had been diagnosed previously – severe back

pain and radiculopathy.  Tr. 228-229.  Yet there was nothing distinctive about the examination on

this date which would lead one to pick February 2002 as the critical date.

There is some evidence casting doubt on the disabling nature of the back problem

prior to February 2002, but it is relatively much less persuasive than that evidence which points

to a disabling back condition.  The first month plaintiff arrived in the United States, she evidently

reported "no major ills," assuming a good translation at the time (plaintiff did not speak English).

The consultative examination performed in February 2001 concluded that plaintiff was

essentially fully functioning, Tr. 145-146 (she could lift up to 50 pounds occasionally and 25

pounds frequently); however, this examination was a one shot examination which had access to

none of the objective information referenced above.  This consultative examination is hardly the

type of evidence which would appear substantial in an overall analysis.  Moreover, the consistent

treating records showing a serious back problem far outweigh in value the one time exam by the

1  Social Security consultant.   Lester v. Chater, 81 F.3d 821, 830-831 (9th Cir. 1995) (treating

2  physician records generally the most persuasive).  Finally, there was one later nerve study which

3  did not show abnormal electronic conduction, Tr. 238 (March 2002), but this study (even post-

4  dating the ALJs found date) was trumped by the unequivocal, May 2002 MRI scan which

5  pictured the very damaged lumbar area, Tr. 226, and it certainly lent support to the February

6  *2001* nerve conduction study which had shown radiculopathy, i.e, plaintiff's condition was more

7  or less stationary since February 2001.

8          In sum, the evidence supporting the ALJ's conclusion as to the onset date was

9  slight when compared to the evidence supporting a much earlier date.  Substantial evidence does

10  not support the ALJ's conclusion.

11          The record supports a finding that plaintiff was disabled as of February 2001.  As

12  noted above, in this month, plaintiff received her first objective test demonstrating the

13  radiculopathy of back pain into her leg.  The evidence subsequent to this date, for the most part,

14  was simply consistent and confirmatory of this fact.  Nothing in the record demonstrated an acute

15  worsening of plaintiff's symptoms and treating doctor's diagnoses past February 2001.  The

16  logical conclusion is that the problems manifested by February 2001 were the same problems in

17  kind and degree for which plaintiff was later found disabled.

18          On the other hand, medical evidence prior to February 2001 was simply too sparse

19  on which to make a conclusion that plaintiff's back pain was disabling prior to February 2001.

20          Given that the same residual functional capacity analysis perfomed in February

21  2002, could have been performed in February 2001, and would have lead to a conclusion of

22  disabled, there is no need to determine the remaining subsidiary issues raised by plaintiff.  That

23  is, no listing analysis need be performed because plaintiff would be found disabled under a later

24  portion of the sequential analysis.  One cannot become "more disabled" for purposes of payment

25  of benefits simply because one might be found disabled earlier in the sequential analysis.

26  Similarly, the myriad of other ills posited by plaintiff as worthy of at least commencing the

1  sequential analysis become irrelevant given that the March 2002 date determined by the court.

2  There is no evidence that any of the ills allegedly suffered by plaintiff were of a severity prior to

3  February 2001 to be considered disabling of themselves.

4        The decision whether to remand a case for additional evidence or simply to award

5  benefits is within the discretion of the court.  Pitzer v. Sullivan, 908 F.2d 502, 506 (9th Cir.

6  1990).   In general, the court will consider factors such as the completeness of the record, the

7  weight of evidence in plaintiff's favor, and the potential harm to plaintiff due to further delay.

8  In terms of the completeness of the record, the court will determine whether additional

9  administrative proceedings would remedy the defects in the decision, which the court cannot

10  remedy based on the present record.  See,  Salvador v. Sullivan, 917 F.2d 13, 15 (9th Cir. 1990);

11  Barbato v. Commissioner of Social Security Admin., 923 F. Supp 1273, 1277-78 (C.D.Cal.

12  1996).   Because the record is complete and there is no justification for further delay, the

13  undersigned will remand this case for the purposes of payment of retroactive benefits only, the

14  date of onset being February 2001.

15  *Conclusion*

16        Plaintiff's summary judgment motion (Docket # 20) shall be granted, and the

17  Commissioner's cross-motion for summary judgment (Docket # 23) shall be denied.  This case is

18  remanded to the Commissioner for purposes of calculation of benefits only with an onset date of

19  February 2001.  Judgment shall be entered in favor of plaintiff.

20  Dated: 01/15/09

21                        /s/ Gregory G. Hollows

22  botsyura.ss                _____

                      UNITED STATES MAGISTRATE JUDGE

23

24

25

26